# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| NICHELLE DIONE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-00240-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

On September 29, 2009, Plaintiff Nichelle D. Johnson protectively filed her applications for disability insurance and SSI benefits, alleging a period of disability commencing December 30, 2005. Her application was denied by the Administrative Law Judge ("ALJ") and Johnson now seeks judicial review of that decision. [Doc. # 5]. For the reasons set forth below, the decision of the ALJ is REVERSED and the case is REMANDED for the award of benefits consistent with this order.

I.  **Background**

At a hearing on June 28, 2011, Johnson testified she was 35 years old and a high school graduate. It had been a couple of years since she had last worked. Her past work involved customer and telephone services. Johnson said she was terminated from these jobs because of attendance problems. She tried being a health aide but could not do the

lifting. (T. 52-53) Johnson's medical records show she has insulin dependent diabetes, and regularly weighs over 400 pounds. She has problems with her knees and back and chronic headaches. Johnson testified that she also has problems with anxiety. Her brother was killed around August 28, 2008 and she was the victim of a home invasion. Johnson said she is often scared to go outside and is afraid someone will break into her home. At the time of the hearing she was seeing a psychiatrist once a month. A therapist comes to her home once a week to give her treatment. This permits Johnson to stay in her home. She testified that she is unable to take her daughter to the bus most day and until she received medication she could not go grocery shopping. She self reported panic attacks three to four times a week. Her medications helped her panic attacks but they made her drowsy so she did not take them if she wanted to be awake.

Dr. Nair, Johnson's treating psychiatrist; and Karla Mock, her treating therapist and a licensed professional counselor; both expressed their opinions via medical source statements. (T. 499-501, 566-68) Dr. Nair indicated she first saw Johnson on January 12, 2011. Her diagnoses were PTSD, rule out obsessive compulsive disorder; and panic disorder with agoraphobia. Dr. Nair reported Johnson was taking Lexapro and Lunesta. She noted Johnson had co-morbid medical problems of high blood pressure so her choice of medications was limited. Prognosis was guarded. Dr. Nair's treatment notes show a GAF of 40-45. (T. 506-11) A GAF score falling between 41-50 indicates serious symptoms. In March 2011, Johnson told Dr. Nair she tried going out but had a couple panic attacks. She said she got overwhelmed in the store and was unable to complete her shopping. Dr. Nair noted on mental status exam that Johnson's mood was anxious and

2

her affect was restricted. Insight and judgment were partial. Dr. Nair recommended Prozac and noted certain medications were not an option for Johnson because of her high blood pressure. (T. 559) In a medical source statement completed on May 18, 2011, Dr. Nair indicated Johnson was constantly limited in her ability to demonstrate reliability; frequently limited in relating to co-workers, dealing with public, using judgment, interacting with supervisors; and maintaining attention and concentration; and occasionally limited in following work rules, dealing with work stress, and behaving in emotionally stable manner. Dr. Nair stated Johnson could have only limited interaction with co-workers due to anxiety and other symptoms related to PTSD. (T. 499-501)

On May 25, 2011, Carla Mock, MA, LPC, completed a Medical Source Statement of Mental Work-Related Impairments. She reported she began treating Johnson in October 2010. Johnson's diagnosis was anxiety disorder and Ms. Mock was providing cognitive behavioral therapy. She noted Johnson was responsive to therapy, but continued to suffer from severe anxiety and depression with little improvement. Ms. Mock indicated Johnson was frequently or constantly limited in most areas of work. (T. 566-68) On July 11, 2011, Ms. Mock noted Johnson was working toward improving her anxiety, but continued to struggle daily. She noted Johnson needed to get out of the house, but her fear and anxiety prevented her from doing so. (T. 761-62)

The ALJ after being provided the above information, concluded that Johnson should undergo a consultative evaluation. On July 22, 2011, Kat Bowie, Psy.D., a clinical psychologist, performed a psychological evaluation at the request of Disability Determinations. This assessment Johnson reported she had great difficulty leaving her

house and cried frequently. She said she constantly check doors, locks and windows in her house throughout the night. She reported having panic attacks two to three times a week causing chest pain and pressure, increased heart rate, numbness, dizziness, nausea, and fear of dying. Johnson told Dr. Bowie she was staying at her cousin's house in 2007 or 2008 when the house was broken into and the intruder put a gun in her face and then against her daughter's head. The year following this, her brother was shot and killed on his way home from work. She said her symptoms greatly increased after these events, but she said she had always felt it was scary to go out. These two events made it almost unbearable with anxiety and terror for her. She said she did not go anywhere unless she had to, and was constantly hyper-vigilant. Dr. Bowie noted on mental status examination that Johnson appeared to be experiencing an anxious and depressed mood which seemed to be severe. She appeared incapable of tolerating vocational pressures. Dr. Bowie diagnosed post traumatic stress disorder (PTSD), chronic; major depressive disorder, recurrent, severe without psychotic features without inter-episode recovery superimposed upon dysthymic disorder; dysthymic disorder, early onset; panic disorder with agoraphobia; and generalized anxiety disorder. Global assessment of functioning (GAF) score was 43. (T. 574-79) Johnson's case manager accompanied her to this evaluation and was present for part of it to support Johnson. (T. 772-73)

    Dr. Bowie also completed a Medical Source Statement and indicated Johnson had mild restriction in her ability to make judgments on simple work-related decisions; moderate restriction in ability to understand, remember and carry out complex instructions; and marked restriction in her ability to make judgments on complex work-

4

related decisions. She noted that as Johnson's anxiety increased, her decision making abilities decreased. Though Johnson was extremely bright, her anxiety and depression affect her ability to think clearly and quickly. Dr. Bowie noted Johnson had extreme restriction interacting appropriately with the public and responding appropriately to usual work situations and to changes in a routine work setting; and marked restriction interacting appropriately with supervisors and co-workers. She reported Johnson's extreme anxiety caused her to have difficulty focusing on tasks as she was constantly hyper-vigilant of her environment for her safety, making it difficult to stay focused and on task. New settings and unfamiliar people cause extreme fear and anxiety for Johnson. Dr. Bowie noted that, though Johnson was a pleasant person and not aggressive, her fear made her withdraw and shut down. She stated that Johnson's symptoms were greatly exacerbated by the attacks in 2007-2008. (T. 571-73)

In a summary completed on August 29, 2011, Johnson's case manager at ReDiscover reported Johnson had regularly met with her the previous quarter to discuss ways to decrease isolation and anxiety, and increase community integration. She noted Johnson worked on getting out of the house at least two times weekly to decrease isolation. Johnson was still struggling with going for walks in the neighborhood and reported she was still trying to fight through the anxiety and paranoia. The case manager noted Johnson would accompany her with going to different appointments. Johnson reported she was doing better the last quarter with trying to get at least four hours of sleep. (T. 764-65)

The final medical expert testified at a second hearing on January 18, 2012. Richard Cowles, Ph.D., a clinical neuropsychologist, had reviewed Johnson's medical at the request of the ALJ. He concluded that the diagnoses of major depressive disorder, post traumatic stress disorder, and panic disorder with agoraphobia were supported by the record. (T. 72) He concluded, however, that Johnson has mild limitations in daily activities; and moderate limitations in social functioning and maintaining concentration, persistence and pace. She could have only incidental contact with the public but would be all right with co-workers and supervisors because she only had problems with people she did not know.

## II.    Discussion

The ALJ determined that Johnson had impairments of morbid obesity, insulin dependent diabetes mellitus, mild degenerative joint disease of bilateral knees, history of episodes of mild anemia, affective disorder, and anxiety related disorder. He found the combination of these impairments was severe. (T. 17) He found Johnson had the residual functional capacity to lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently; sit six to eight hours total; stand and/or walk six hours total in an eight hour day; occasionally climb, balance, stoop, kneel, crouch or crawl; reach, handle, finger and feel within the above-cited weight limitations; perform work not involving detailed instructions or tasks; perform occasional interactions with supervisors or co-workers; is precluded from jobs requiring interactions with the general public; understand, remember, and carry out simple instructions or tasks; use simple judgment; respond

appropriately to supervisors, co-workers and usual work situations; and deal with changes in atypical work setting. (T. 18) Given these limitations, the ALJ concluded that Johnson was not disabled. In making that decision, the ALJ accepted and adopted the findings of Richard Cowles and rejected contrary findings made by Johnson's treating psychiatrist and therapist and the consultative report of Dr. Bowie. Johnson contends this was error because the opinions of the treating and examining experts was supported by the record and therefore were entitled to substantial weight. In contrast, Dr. Cowles never saw Johnson and merely reviewed records with which he disagreed with minimal explanation.

The Eighth Circuit requires that an ALJ give substantial weight to the treating physician's opinion in evaluating a claim for disability unless it is unsupported by evidence or is merely conclusory. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002); *Grebenick v. Chater*, 121 F.3d1193, 1199 (8th Cir. 1997); *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988); *Douglas v.Bowen*, 836 F.2d 392, 395 (8th Cir. 1987). (T. 225) The opinion of a treating specialist is entitled to great weight. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Dr. Zair's medical records support her opinion, and her opinion is consistent with Ms. Mock's records and Dr. Bowie's opinion. The testimony of Johnson's caseworker is also consistent with the opinions of Johnson's medical providers. The only outlier is Dr. Cowles who never examined Johnson and was only contacted after Dr. Bowie's opinion supported Johnson's claim for disability. Therefore, there is not substantial evidence in the record to support the ALJ's rejection of the opinions of Dr. Zair, Ms.Mock and Dr. Bowie. Further, given the limitations they imposed in

7

combination with her physical condition, it is clear that Johnson is not capable of any gainful employment at this time.

However, the record does not support a finding that Johnson's disability began on December 30, 2005. At that time, the record does not show Johnson had received treatment for any mental impairments, much less the kind of mental impairments documented by Doctor Zair, and Ms. Mauk. Therefore, the Court must determine the date when Johnson became so impaired that she could no longer perform gainful employment.

Having reviewed the record, the Court concludes that date is January 12, 2011, the date when Johnson first was seen by Dr. Zair and consistently thereafter received therapy from both Dr. Zair and Ms. Mauk. Of course, the exact date cannot be established with certitude. The Court recognizes that Ms. Mauk began therapy as early as March 2010. However, that therapy was curtailed in July 2010 because Ms. Mauk was unable to contact Johnson. Further, there is no evidence that Johnson sought medication for her mental impairments before meeting with Dr. Zair. In addition, there is substantial evidence in the record to support a finding that Johnson's physical conditions alone did not render her disabled. In deed the focus of Johnson's brief is that the ALJ did not give adequate weight to the opinions of Dr. Zair and Ms. Mauk and Dr. Bowie. But their work was done long after the alleged onset date of December 2005.

### III. Conclusion

The decision of the ALJ is reversed and the matter is remanded for the payment of benefits beginning January 12, 2011.

/s Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: May 22, 2014  
Jefferson City, Missouri